FILED
 2009 Jun-12 AM 10:37
U.S. DISTRICT COURT
    N.D. OF ALABAMA

```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

RBC BANK (USA),                  }
                                 }
     Plaintiff and               }
     counter-defendant,          }    CIVIL ACTION NO.
                                 }    09-AR-0095-S
v.                               }
                                 }
WILLIAM P. GLASS, et al.,        }
                                 }
     Defendants and
     counterclaimants.
```

## MEMORANDUM OPINION

Before the court is the motion of plaintiff/counter-defendant, RBC Bank (USA) ("RBC"), for partial dismissal[1] of the counterclaim of defendants/counterclaimants, William P. Glass[2] and Anne A. Glass (hereinafter collectively "defendants"), pursuant to Rule 12(b)(6), Fed. R. Civ. P. Defendants claim that RBC breached a contract it had with defendants and that RBC violated the following federal and state laws: (1) the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"); (2) the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 *et seq.* ("RESPA"); (3) the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"); (4) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA")(claims "1, 2, 3, & 4" collectively referred to as "federal counterclaims"); (5) the

---

[1] RBC does not dispute that defendants have stated a claim based on breach of contract.

[2] There is a dispute over whether the proper defendant has been named. This issue is discussed *infra* at pages 7-8.

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"); and (6) the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq.* ("FCCPA"). For good measure defendants assert (7) that RBC failed to mitigate its damages, (8) has been unjustly enriched, (9) is liable as a joint venturer, and (10) is guilty of civil conspiracy (claims "5, 6, 7, 8, 9, & 10" collectively referred to as the "state counterclaims"). For the following reasons, RBC's motion will be granted for the most part.

### **Pertinent Factual Allegations**[3]

This case arises out of an agreement for a revolving line of credit entered into between AmSouth Bank ("AmSouth") and defendants, executed on September 12, 2003 ("the agreement"). Regions Bank ("Regions"), successor-by-merger to AmSouth, assumed the obligations of AmSouth and was to enjoy any benefits of its agreements.[4] Under the agreement, Regions made available to defendants a line of credit with a maximum principal amount of $152,000.00. RBC alleges that Regions assigned its rights in the

---

[3] The recitation of facts is based on the allegations contained in the amended complaint and the answer/counterclaim. While the precise timeline in which the relevant events occurred is not clear from the face of these documents, the court has attempted to piece together the various allegations to make a coherent narrative, always resolving any ambiguity in favor of the non-moving party.

[4] Defendants point out that thus far RBC "has produced no assignment or endorsement of any document from AmSouth Bank to Regions." (Defs.' Answer/Countercl. ¶ 10.) However, it is common knowledge that Regions and AmSouth merged.

agreement to RBC. Defendants deny, *inter alia*, that RBC has produced a true and correct copy of the agreement and deny that RBC is a "holder in due course" of the agreement. They also deny that RBC owns the indebtedness evidenced by the agreement. (Defs.' Answer/Countercl. ¶¶ 7, 25.) Of note, the agreement contains an arbitration clause that strangely neither party has invoked. (Pl.'s Am. Compl. Ex. A. 7.)

In its complaint, RBC alleges that defendants defaulted on their payment obligations, whereupon RBC accelerated the indebtedness. Defendants deny that they are in default, deny that they owe anything to RBC under the agreement and further deny that "they have received any monies from [RBC]." (Defs.' Answer/Countercl. ¶ 25.)

Defendants allege that RBC's attorneys have received approximately $15,000 "in violation of the credit agreement," and that RBC has "filed a claim for insurance and is attempting to be paid twice on a claim it does not own." *Id.* Defendants also allege that, in responding to defendants' "qualified written request ("QWR"),"[5] RBC refused to provide "information on pooling and servicing agreements pursuant to account numbers that appear to indicate the subject credit agreement was part of a special investment vehicle or securitized as part of a trust agreement. .

---

[5] A portion of RESPA, QWR's constitute part of the "[d]uty of loan servicer[s] to respond to borrower inquiries." *See* 12 U.S.C. § 2605(e); *see also infra* at pages 10-12.

3

. . . [and] refused to answer questions regarding Defendants' loan. . . . [and certain] questionable charges . . . [and also] shredded documents." (Defs.' Answer/Countercl. ¶¶ 36-38; 107-111.) Defendants further allege that RBC repeatedly made phone calls to defendants in an attempt to "collect a debt it is not owed," continued to make phone calls and leave messages on the defendants' phone lines, and left the phone messages on machines accessible to parties other than the defendants. (Defs.' Answer/Countercl. ¶¶ 118-121.) Defendants also assert that "these phone calls were made by a third party hired by [RBC]." *(Id.* at ¶ 119.)

## **Pertinent Facts**

On April 4, 2008, Bank of America ("BOA") commenced a judicial mortgage foreclosure action in Walton County, Florida on certain real property owned by defendants. *Bank of America v. William Glass, Jr. et al.*, No. 08-CA-00510 (Fla. Walton County Ct. 2008)(hereinafter "Florida action"). In the Florida action, BOA seeks to foreclose its senior mortgage on the Florida property, naming as defendants not only William P. Glass, Jr. and Anne A. Glass, but RBC as a junior lien holder.

In November, 2008, RBC filed a complaint against the defendants in Jefferson County, Alabama, *RBC Bank v. William P. Glass et al.*, 01-CV-2008-903403.00 (Ala. Jefferson County Ct. 2008)(Privett, J.)(hereinafter "Jefferson County litigation"), in which defendants moved pursuant to Rule 12(b), Alabama Rules of

4

Civil Procedure, for a dismissal. On January 16, 2009, the case was dismissed. However, the state court's order does not state whether the dismissal was "with prejudice" or "without prejudice." According to an unrefuted statement by RBC, the state court granted defendants' motion because of improper venue, the defendants being residents of Shelby County, Alabama, and not Jefferson County, Alabama. (Pl.'s Resp. to Defs.' Mot. to Dismiss 2-3.)

On January 16, 2009, RBC filed its present action in this court. It included a copy of the agreement. On February 17, 2009, defendants moved to dismiss the action based, *inter alia*, on improper venue. On March 13, 2009, the court heard oral argument on defendants' motion. William P. Glass, Jr. appeared *pro se* and as counsel for his wife, Anne A. Glass. The court denied defendants' motion to dismiss. Later that day, RBC filed an amended complaint (Doc. 10) and evidentiary material (Doc. 11) as an exhibit to the amended complaint, and incorporated the evidentiary material by reference as Exhibit A. (Pl.'s Am. Compl. ¶ 7.) A copy of what RBC avers to be the agreement signed by defendants (Doc. 11) is the same agreement attached to RBC's original complaint.

On April 3, 2009, defendants filed an answer and counterclaim. On April 23, 2009, RBC filed its motion to dismiss the counterclaim. On May 6 and May 7, 2009, defendants made six filings styled "EXHIBIT [__] IN SUPPORT OF DEFENDANT'S [sic] ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AND IN OPPOSITION TO

5

PLAINTIFF'S MOTION TO DISMISS." These evidentiary materials include QWR correspondence between defendants and RBC (Docs. 21-24), affidavits by each defendant (Docs. 21 and 26), and correspondence between defendants and AmSouth (Doc. 25). None of the materials can be thought of as a response to the memorandum of law submitted by RBC, but on May 7, 2009, RBC filed a reply brief to them. Later that day, defendants filed a brief styled "DEFENDANTS [sic] ARGUMENT IN RESPONSE TO PLAINTIFFS [sic] MOTION TO DSIMISS [sic] COUNTERCLAIMS," which contained a response to RBC's motion to dismiss and included an attachment that is purportedly a copy of defendants' mortgage on the subject real property in Walton County, Florida.

## Discussion[6]

Defendants' haphazard filing of evidentiary materials, coupled with the out-of-sequence filing of reply and response briefs, *see* (Docs. 27 and 28), amongst other problems, including an

---

[6] In order to survive a 12(b)(6) motion, the claimant must allege "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). He must allege "enough facts to state a claim to relief that is plausible on its face," and the facts "must be enough to raise a right to relief above the speculative level." *Id.* at 570. A complaint must contain "'enough factual matter (taken as true) to suggest'" each material element of a claim. *See Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007)(quoting *Twombly*, 550 U.S. at 556). In considering a 12(b)(6) motion, the court "must accept the well pleaded facts as true and resolve them in the light most favorable to the [non-movant]." *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005) (quotations and citation omitted). The court will liberally construe the counterclaim allegations in defendants' favor. However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)(citation omitted).

unmanageable answer and counterclaim, have made this case into a litigious mess. The parties, particularly the defendants, have done little to address the problems that they themselves have helped to create. In order to move this case forward, the court will do its best with what it has before it.

*Naming the Proper Party*

The complaint and amended complaint name the defendants as "William P. Glass" and "Anne A. Glass." These two names likewise appear on the agreement. (Pl.s' Am. Comp. Ex. A 7.) In the answer and counterclaim, "'William P. Glass, **Jr**.' denies that he is 'William P. Glass,' as captioned in the complaint [and also] denies that the proper party is referred to in the complaint." (Defs.' Answer and Countercl. ¶ 2.)(emphasis added). This has led to some perplexing and unhelpful responses by defendants, such as, "The defendants as named signed no such agreement with the plaintiff in Shelby County Alabama." (*Id.* at ¶ 8). At this court's March 13, 2009, motion docket, William P. Glass, **Jr**.[7] appeared *pro se* and as attorney for his wife "Anne A. Glass," however, neither RBC nor "William P. Glass, **Jr**." cleared up the ambiguity about the named defendant, "William P. Glass."

It appears that the "William P. Glass" named in the agreement and the "William P. Glass, Jr." who appeared before this court on

---

[7] This is also how he appears in the Northern District of Alabama's attorney registration form.

March 13, 2009 and filed defendants' answer and counterclaim are, **in fact**, the same person, *see* (Defs.' Mot. to Dismiss) (Doc. 4), and will be treated as such by this court. If William P. Glass and William P. Glass, Jr. are not one and the same, William P. Glass, Jr. cannot appear *pro se*. Going forward, the parties are reminded of their continuing obligations under the Federal Rules of Civil Procedure, particularly Rule 8 and Rule 11.

*Jurisdiction*

While not addressed by either party, "[w]hen a federal court decides a state law claim, whether acting pursuant to diversity or supplemental jurisdiction, it applies the choice-of-law rules of the jurisdiction in which it sits." *Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC*, 307 F. Supp. 2d 1249, 1258-59 (M.D. Ala. 2004)(citations omitted). "Alabama applies the traditional doctrine[ ] of *lex loci contractus* to contract claims . . . [which] governs the validity, interpretation, and construction of the contract." *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004)(quoting *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991)). Therefore, Alabama law governs any issue of contract interpretation.

*Evidence Outside the Pleadings*[8]

---

[8] The amended complaint supercedes the original complaint, *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007), and RBC has effectively incorporated the agreement into its amended complaint. *See* Fed. R. Civ. P. 10(c).

"As a general rule, the district court must 'limit[ ] its consideration to the pleadings and exhibits attached thereto' when deciding a Rule 12(b)(6) motion to dismiss." *Lewis v. Asplundh Tree Expert Co.*, 305 Fed. Appx. 623, 627 (11th Cir. 2008)(quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)). If the parties present evidence outside of the pleadings, and the district court considers the evidence, the motion to dismiss is converted into a motion for summary judgment. *Id.*

Here, defendants filed numerous evidentiary materials in opposition to RBC's motion to dismiss. They styled this stuff "EXHIBIT [ ] IN SUPPORT OF DEFENDANT'S [sic] ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AND IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS." Defendants have filed a purported copy of a mortgage on the Florida property. RBC argues that the court should disregard defendants' evidentiary submissions and rule on its motion based solely on the contents of defendants' counterclaims. The court agrees with RBC. Accordingly, the court will not utilize any materials outside of the pleadings. To the extent not contained within the scope of the pleadings, the court also will ignore all arguments relating to the excluded material. Neither party has requested that the motion to dismiss be converted into a motion for summary judgment. The court will not undertake to do so, particularly given the haphazard filings.

### **Federal Counterclaims**

*FCRA*

The FCRA does not provide a private right of action for a violation of § 1681s-2(a)("Duty of furnishers of information to provide accurate information"), *Green v. RBS Nat'l Bank*, 288 Fed. Appx. 641, 642 (11th Cir. 2008). However, it does provide such a right in § 1681-2(b), "but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency." *Id.; see also* 15 U.S.C. § 1681a(f)(definition of "consumer reporting agency").

There is no allegation in defendants' counterclaim that RBC received notice of defendants' dispute from any consumer reporting agency, or that defendants even notified a consumer reporting agency of any dispute over any black mark on defendants' credit as reported by RBC. *See* (Defs.' Answer/Countercl. ¶ 104.) Therefore, defendants' FCRA claim will be dismissed.

*RESPA*

Section 6(e) of RESPA requires a loan servicer, upon receipt of a QWR, to take certain actions with respect to borrower inquiries. *See* 12 U.S.C. § 2605(e). In order to trigger the duty of the loan servicer, the borrower must, via written correspondence (known as a QWR), alert the loan servicer of the reasons for the borrower's belief that the account is in error. 12 U.S.C. § 2605(e)(1)(B). Upon receipt of the QWR, RESPA requires that, within sixty days, the servicer do one of three things: (1) correct the

borrower's account and inform the borrower of those corrections in writing; (2) investigate and provide a written explanation to the borrower of the reasons that the servicer believes that the borrower's account is correct; or (3) investigate and provide a written explanation to the borrower of the reasons that the servicer cannot obtain the information that the borrower is requesting. *See* 12 U.S.C. § 2605(e)(2).

RBC says that defendants failed to allege "details regarding whether [they] sent a QWR to RBC or about the contents of the request,"[9] and, therefore, "defendants cannot properly allege that RBC had any obligation to comply with § 2605(e)." (Pl.'s Mot. to Dismiss Br. 15.) While there is some support for RBC's proposition, see *Jones v. ABN Ambro Mortg. Group, Inc.*, 551 F. Supp. 2d 400, 411 (E.D. Pa. 2008), it appears that no court in the Eleventh Circuit has addressed this point of law. This court need not address it. As RBC points out, the more salient 12(b)(6) issue is whether the defendants pled that RBC's responses to the QWR were "either untimely or substantively inadequate." (Pl.'s Mot. to Dismiss Br. 17.) Defendants allege that RBC (1) refused to provide information on pooling and servicing agreements pursuant to account numbers that appear to indicate the subject credit agreement was part of a special investment vehicle or securitized as part of a trust

---

[9] In their "First Affirmative Defense," defendants aver that they "issued a QWR to [RBC] in December of 2008, in part, for discovery purposes in a pending action in Walton County Florida." (Defs.' Answer/Countercl. ¶ 33.)

11

agreement and (2) refused to answer questions regarding defendants' loan and certain questionable charges. Given the procedural posture, and with some trepidation, the court cannot find that defendants have failed to allege adequately that RBC's QWR responses were substantively inadequate. For now, defendants RESPA claim will go forward. It will undoubtedly be looked at again under Rule 56 analysis.

*TILA*

RBC argues that defendants' TILA claim[10] is barred by the statute of limitations. The TILA states in pertinent part:

> **(f) Time limit for exercise of right**
>
> An obligor's **right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first**, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . .

15 U.S.C. § 1635(f) (emphasis added); *see also Parker v. Potter*, 232 Fed. Appx. 861, 864 (11th Cir. 2007)("If the creditor fails to deliver the forms, or fails to provide the required information, then the consumer's right of rescission extends for three years after the date of the consummation of the transaction, or until the property is sold, whichever occurs first.")(quoting 15 U.S.C. §

---

[10] Defendants Answer/Counterclaim states "Count IV - RESPA and TILA Violations," and contains only one allegation that appears to allege a TILA violation, namely, "Plaintiff failed to provide the three day right of recession [sic] documents as required." (Defs.' Answer/Countercl. ¶ 109.)

1635(f) and 12 C.F.R. § 226.23(a)(3)).

The agreement was signed on September 13, 2003. This case was filed on January 16, 2009. The case is barred by the TILA's three-year statute of limitations. Defendants' TILA claim will be dismissed.

*FDCPA*

The overall purpose of the FDCPA is to eliminate "abusive debt collection practices by **debt collectors**,"[11] and to protect consumers who have been the victims of such practices. 15 U.S.C. § 1692 (emphasis added); *see also Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F. Supp. 2d 1161, 1165 (N.D. Ala. 1999). Debt collectors are bound by the FDCPA's restrictions, while **creditors**, on the other hand, are not. *Id.* at 1166.

Creditors are defined as:

> [A]ny person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an **assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another**.

15 U.S.C. § 1692a(4)(emphasis added). The FDCPA proscribes numerous types of behavior by debt collectors, including "us[ing] violence,

---

[11] The term "debt collector" is defined as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

obscenity, or repeated annoying phone calls," 15 U.S.C. § 1692d; falsely representing "the character, amount or legal status of any debt," 15 U.S.C. § 1692e(2)(A); and the use of certain "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f.

Defendants allege that RBC (1) repeatedly made phone calls to defendants in an attempt to "collect a debt it is not owed," (2) continued to make phone calls and leave messages on the defendants' phone lines; (3) and left the phone messages on machines accessible to parties other than the defendants. Defendants also assert (4) that "these phone calls were made by a third party hired by [RBC]." Oddly, allegations (1) and (4) appear to contradict each other. However inartful defendants' pleadings may be, the question of whether RBC is a "debt collector" or a "creditor" cannot be resolved without some discovery, including evidence relating to the assignment of rights from Regions to RBC and evidence relating to the relationship, if any, between RBC and any "third party" RBC may have hired. Again with trepidation, defendants' FDCPA counterclaim will go forward.

## State Counterclaims

*FDUTPA & FCCPA*

Violation(s) of the FDCPA, FDUTPA, and the FCCPA (or some combination thereof) are not uncommon. *See, e.g., Gaisser v. Portfolio Recovery Associates, LLC*, 593 F. Supp. 2d 1297 (S.D. Fla.

2009)(FDCPA and FCCPA); *Rivera v. Amalgamated Debt Collection Servs., Inc.*, 462 F. Supp. 2d 1223 (S.D. Fla. 2006)(FDCPA, FDUTPA, and FCCPA). However, such cases appear to be rare outside the State of Florida for obvious reasons. The FDUTPA and the FCCPA are "for the protection of **in-state consumers** from either in-state or out-of-state debt collectors. . . . Other states can protect their own residents as Florida does with regard to out-of-state collectors." *In re Nationsrent Rental Fee Litigation*, No. 06-60924, 2009 WL 636188 at *4 (S.D. Fla. 2009)(emphasis added; citations omitted).

Defendants fail to allege facts to support the notion that they are Florida in-state consumers and thus are protected by the FDUTPA and the FCCPA. Defendant Anne A. Glass has admitted that she is a citizen of Alabama. (Defs.' Answer/Countercl. ¶ 3.) As discussed, William P. Glass, Jr., is being treated as if he is defendant, William P. Glass and, although he has not expressly admitted to being a citizen of Alabama, *see id.* at ¶ 2,[12] he has not alleged any relationship to the State of Florida other than as a property owner. Further, he has not provided the court with any reason why a mere property interest classifies him, or for that matter, Anne A. Glass, as an "in-state consumer" subject to the

---

[12] While RBC fails to raise the issue, assuming RBC is correct in its account of the Jefferson County litigation, defendant William P. Glass, Jr. is arguably estopped from claiming that he is not a resident and/or citizen of Alabama, after he successfully had the Jefferson County litigation dismissed based on improper venue in Jefferson County, due to the fact that he is a resident of Shelby County, Alabama.

protections of the FDUTPA and the FCCPA. Accordingly, defendants' FDUPTA and FCCPA claims will be dismissed.

*Failure to Mitigate Damages*

Defendants plead "failure to mitigate damages" as both a claim and as an affirmative defense. (Defs.' Answer/Countercl. ¶¶ 67, 113-117.) As RBC correctly points out, under Alabama law failure to mitigate damages is an affirmative defense, not an offensive claim. *See Prudential Ballard Realty Co. v. Weatherly*, 792 So. 2d 1045, 1048 (Ala. 2000). Accordingly, defendants' claim for failure to mitigate damages will be dismissed without prejudice to its use as a defense.

*Unjust Enrichment*

Although RBC's arguments are well-taken and may prove dispositive, in the absence of evidence demonstrating the terms of the assignment between Regions and RBC and/or the purported insurance proceeds received by RBC, the court cannot say that defendants' claim of unjust enrichment at this juncture have no colorable merit. Given the procedural posture, RBC's motion to dismiss defendants' claim of unjust enrichment will be denied. It may be looked at again under Rule 56 analysis.

*Joint Venture Liability*

Defendants allege that "RBC, its partners and appraisers are part of a joint venture as defined by controlling law . . . [and as a result of the purported conspirators' actions] . . . [d]efendants

16

have been injured and damaged as heretofore alleged." (Defs.' Answer/Countercl. ¶¶ 132-134.) While it is conceivable that RBC could be in a partnership or joint venture with another entity, and, through that relationship, could be causing harm to defendants, defendants fail to allege how such a relationship triggers any **cause of action** under Alabama law. Neither RBC nor this court has found any caselaw defining joint venture liability as a cause of action under Alabama law. Rather, if anything, it is a theory by which to hold multiple entities responsible for unlawful conduct. It seems synonymous with "conspiracy." Once this court issues its scheduling order, defendants will have "joinder of additional parties" and "amendment of pleadings" deadlines. Perhaps at some later date defendants may be able to make a conspiracy claim against RBC and some other putative party. Perhaps not. For now, defendants' said claim will be dismissed.

*Civil Conspiracy*

"A civil conspiracy cannot exist in the absence of an underlying tort." *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 430 (Ala. 2006)(citation omitted). Not only does defendants' purported counterclaim for civil conspiracy contain a paucity of supporting facts, but suggests that the underlying tort complained of is the "unjust enrichment," previously alleged. *See* (Defs.' Answer/Countercl. ¶¶ 136-140.) Neither party has cited, nor has this court unearthed anything in Alabama precedent to suggest that

17

a claim of "unjust enrichment" has ever been classified as a tort by any Alabama court. Accordingly, defendants' said claim will be dismissed.

## **Conclusion**

For the foregoing reasons, RBC's motion to dismiss will be granted in part and denied in part.

DONE this 12th day of June, 2009.

                              /s/ William M. Acker, Jr.
                              WILLIAM M. ACKER, JR.
                              UNITED STATES DISTRICT JUDGE