```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

RBC BANK (USA),                  }
                                 }
     Plaintiff and               }
     counter-defendant,          }     CIVIL ACTION NO.
                                 }     09-AR-0095-S
v.                               }
                                 }
WILLIAM P. GLASS, et al.,        }
                                 }
     Defendants and
     counterclaimants.
```

**MEMORANDUM OPINION**

Before the court is the motion of plaintiff/counter-defendant, RBC Bank (USA) ("RBC"), for summary judgment on its breach of contract claim against defendants/counterclaimants, William P. Glass ("P. Glass") and Anne A. Glass ("A. Glass") (collectively, "the Glasses"), and for summary judgment on the counterclaims brought by the Glasses, including the following federal and state law claims: (1) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"); (2) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"); (3) unjust enrichment; and (4) breach of contract. Because of the procedural posture, all facts are considered in the light most favorable to the Glasses. For the reasons that follow, RBC's motion for summary judgment will be granted.

1

**FACTS**

On September 12, 2003, the Glasses jointly executed a "Credit Agreement and Disclosure" ("Credit Agreement")(Doc. 53-1 at pp. 56-62),[1] whereby AmSouth Bank made available a revolving line of credit with a maximum principal amount of $152,000.  (Doc. 53-1 at 36; Doc. 53-1 at pp. 56-62; Doc. 53-5 at ¶¶ 3-4.)  In the Credit Agreement, the Glasses  promised to make monthly payments of accrued interest, and upon maturity or default, to make a balloon payment equal to the entire outstanding balance, including interest and fees.  (Doc. 53-1 at pp. 56-62.)  Under the Credit Agreement, failure to make payments when due constitutes a default.  (Doc. 53-1 at 58.)  In order to secure their line of credit, the Glasses signed a mortgage granting AmSouth Bank a security interest in a second home located in Destin, Florida.  (Doc. 53-2 at pp. 1-6.)  The Credit Agreement includes a clause allowing AmSouth to assign the agreement without notice to or consent by the Glasses  (Doc. 53-1 at 59.)

When AmSouth Bank later merged with Regions Bank, Regions Bank became the successor-by-merger to the Credit Agreement.  (Doc. 53-8 at ¶ 5; Doc 30 at 2.)  On March 9, 2007, Regions Bank assigned the loan to RBC, and RBC thereby became bound to the Credit Agreement, to which the Glasses were already bound.  (Doc. 53-8 at ¶ 5.; Doc. 53-5 at ¶ 8; Doc. 53-4 at pp. 2-6.)  RBC's  evidence is that RBC's

---

[1] All citations to the record reference the document and page numbers as they appear on the court's electronic filing system.

principal business is not the collection of debts owed to another. (Doc. 53-5 at ¶ 15.)  Rather, RBC either lends money and collects from its own debtors or purchases and services performing loans from other banks.  (*Id.*)  The evidence also shows conclusively that the Glasses' loan was not in default when it was assigned to RBC in March of 2007.  (Doc. 53-4 at 2; Doc. 53-1 at 38-40.)  The Glasses offer no evidence to support their contrary position.  This leaves RBC's evidence on this issue uncontroverted.

    The Glasses drew down money from time to time pursuant to the Credit Agreement. (Doc. 53-5 at ¶ 7.)  The Glasses admit this fact, as they must. (Doc. 53-1 at 36; Doc. 53-7 at ¶¶ 8-10.)  The Glasses made all scheduled payments until April, 2008.  (Doc. 53-7 at 2.) RBC's evidence shows that the Glasses have failed to make their monthly payments since that time.  (Doc. 53-5 ¶ 9).  In her responses to RBC's first request for admissions, A. Glass admits that the Glasses failed to make payments when due, and that the Glasses are in default under the terms of the Credit Agreement. (Doc. 53-7 at 2.)  Despite the default, A. Glass admits that the Glasses have not paid the outstanding balance of their loan as demanded by RBC.  (Doc.53-5 ¶ 11; Doc 53-7 at 2.)  The court can attribute A Glass's admission to P. Glass, who attempted for a time to be A. Glass's lawyer, as well as husband.

    In their counterclaim, the Glasses allege that in October, 2003, AmSouth Bank made questionable charges to their account.

3

(Doc. 12 ¶¶ 96-96.)  The Glasses did not sue AmSouth or Regions. The Glasses allege that RBC made similar unauthorized charges.  (*Id.* at ¶ 102.)  RBC rebuts these allegations with evidence that, as of July 21, 2010, the amount outstanding on the Credit Agreement was $147,938.98, excluding attorney fees and costs.  (Doc. 53-5 at ¶ 13.)

The Credit Agreement provides that, should the Glasses default, RBC may recover attorney fees and costs associated with collecting the amount owed.  (Doc. 53-1 at 58-59.)  Specifically, the Credit Agreement provides:

> We may hire or pay someone else to help collect this Agreement if you do not pay.  You will pay us that amount.  This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses whether or not there is a lawsuit. . . .  If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

(Doc. 53-1 at 58-59.)

On December 22, 2008, the Glasses wrote to RBC, without sending a copy to any predecessor lender.  (Doc. 53-2, pp. 11-34.)  The correspondence, known as a Qualified Written Request (a "QWR"), included at least 178 separate requests for admissions and production of documents.  (*Id.*)  These requests sought, *inter alia*; (1) information about whether the Credit Agreement was part of a special investment vehicle or securitized as part of a trust agreement; and (2) information about certain questionable charges to the Glasses' account.  (*Id.*)  On January 21, 2009, RBC

acknowledged the receipt of the Glasses' QWR. (Doc. 53-2 at 35.) On March 13, 2009, RBC responded to the QWR, asserting that the Glasses' loan was serviced correctly. (Doc. 35-2 at pp. 38-69.) The March 13, 2009 response also included the Glasses' payment history with RBC. (*Id.* at 38.)

As to information that RBC could not obtain regarding the Glasses' payments and fees paid to Amsouth/Regions, the March 13, 2009 response instructed the Glasses to contact Amsouth/Regions directly, and that the information was unavailable to RBC. (*Id.* at 38-69.) Finally, the March 13, 2009 response included the name and phone number of an RBC employee who could assist the Glasses if they had further inquiries regarding the servicing of their loan. (*Id.* at 39.) Actual contact was apparently never thereafter made by either of the Glasses with any person designated by RBC or with AmSouth/Regions. Instead, the Glasses jumped upon the RESPA and FDCPA freight trains.

The Glasses' counterclaim alleges that RBC violated RESPA by: (1) repeatedly making phone calls to them in an attempt to "collect a debt it is not owed,"; (2) continuing to make phone calls and leave messages on the defendants' phone lines; and (3) leaving the phone messages on machines accessible to parties other than the defendants. (Doc. 12 ¶¶ 118-121.) The Glasses contradictorily assert that "these phone calls were made by a **third party hired by [RBC]**." (*Id.*)(emphasis added). Neither of the Glasses has submitted an

5

affidavit or other evidence to prove that RBC, by its own personnel, actually made the calls complained of.  With undisputed evidence that the calls were made by a third party, if made, rather than by a RBC employee, a dispositive, undisputed fact appears.

**DISCUSSION**

**A.  The Glasses' Allegations**

Before discussing the merits of RBC's motion for affirmative summary judgment as a plaintiff, the court first addresses various allegations made by the Glasses in their Rule 56(f) motion and throughout the pleadings.  The Glasses claim that RBC: (1) does not own their loan; (2) is not the real party in interest; and (3) is seeking a double recovery.  Each of these allegations is addressed in turn.

**1.  Ownership of the Glasses' Loan**

The Glasses contend that RBC does not in fact own their loan, and that it is attempting to collect on a debt as to which it is not the obligee.  However, the Glasses have not provided any evidence to substantiate this contention.  Meanwhile, RBC has presented concrete evidence that it does, in fact, own the Glasses' loan.

The Glasses admittedly signed the Credit Agreement with AmSouth Bank.  (Doc. 53-1 at 56.)  When AmSouth Bank merged with Regions Bank, Regions Bank admittedly assumed all obligations and became entitled to all benefits of AmSouth's agreement with the Glasses. (Doc. 30 at 18, n. 4; Doc. 53-8 at ¶ 5.)  On March 9, 2007, Regions

6

admittedly assigned the Glasses' Credit Agreement and loan to RBC. (Doc. 53-8 at ¶ 5; Doc. 53-5 at ¶ 8; Doc. 53-4 at 2-6.) The Credit Agreement admittedly included a clause allowing AmSouth to assign the agreement without notice or consent of the Glasses (Doc. 53-1 at 59.) The Glasses admittedly made loan payments **to RBC** from the time the Credit Agreement was assigned to RBC until the Glasses defaulted. (Doc. 53-1 at 38.) Lastly, the Glasses admittedly communicated with RBC **as the lender**. (Doc. 53-2, pp. 11-34.) The Glasses' contention that RBC does not own their loan is without colorable merit and they are estopped as a matter of law to deny RBC's ownership.

### 2. Real Party in Interest

The Glasses' filed a Rule 56(f) motion claiming, *inter alia*, that "**were discovery to lead to evidence** that [RBC] had been made whole," the Glasses would seek leave to amend their pleadings to add RBC's insurance company. (*Id.* at 8) (emphasis added). The court granted the Glasses' Rule 56(f) motion, and extended the discovery period by two months. Despite this extension, the Glasses did not submit any additional evidence to substantiate these allegations or request an addition of parties. The court granted the Glasses' motions for leave to file a reply to RBC's motion for summary judgment (Doc. 60, 61), but the Glasses did not file a reply. Not only have the Glasses not filed a motion to join any other party defendant, but have not attempted to dragoon a co-plaintiff under

7

Rule 17, F.R.Civ.P.

To determine if a plaintiff is the real party in interest, federal courts are bound by Alabama substantive law. *See, e.g. Story v. Pioneer Housing Sys.,* 191 F.R.D. 653, 654 (M.D. Ala. 2000) (citing *Indus. Dev. Bd. of the City of Prattville v. Brown & Root, Inc.,* 99 F.R.D. 58 (M.D. Ala. 1983), *aff'd in part without opinion,* 795 F. 2d 87 (11th Cir. 1986). In order for an insurance company to be the real party in interest under Alabama law, the equitable nature of subrogation requires that the insured has received a full recovery (hereinafter, the "full recovery rule"). *E.g., Ex parte State Farm Fire & Cas. Co.,* 764 So. 2d 543 at 547 (Ala. 2000). However, the full recovery rule can be overcome if the insurance contract includes a subrogation agreement. *Id.*

The Glasses have not presented any evidence that RBC has received any funds from its insurer, much less a full recovery. Additionally, the Glasses have not presented any evidence that RBC's insurance policy contained a subrogation clause that would supervene the full recovery rule. Meanwhile, RBC has presented evidence that, while it does have an insurance policy covering the Glasses' loan, it has neither sought, nor received, **any compensation whatsoever** from its insurance provider. (Doc. 53-4 at 23-4; Doc. 53-5 at ¶ 14; Doc. 59-2 at ¶¶ 25, 28.) The court is completely satisfied that RBC is the only proper plaintiff. When the Glasses, in a separate order, suffer a judgment against them for the balance they owe, RBC

will have no occasion to call upon its insurer.

### 3. Double Recovery

The Glasses' Rule 56(f) motion also alleged that RBC might be seeking a double recovery by collecting a judgment against the Glasses while claiming the same loss under its insurance policy. (Doc. 56 at 7.) This claim, addressed *supra*, suffers from the same evidentiary deficiencies as the Glasses' real-party-in-interest contention, and fails as well. Even if RBC's insurer were a proper party, the Glasses' double recovery argument would fail. Under Eleventh Circuit precedent, "[a]ny multiplicity of suit risk can be obviated by final judgment of the district court." *Dudley v. Smith*, 504 F.2d 979, 983 (5th Cir. 1975) (finding joinder of plaintiff's insurer was not required under Rule 17 F.R.Civ.P., even where insurer was partial subrogee of plaintiff's action). Having dispensed with the Glasses' unsubstantiated allegations on this point, the court will address the merits of RBC's motion for summary judgment.

## B. RBC's Motion for Summary Judgment

RBC moves for summary judgment on its single affirmative claim, as well as to each of the Glasses' counterclaims that have survived until now. Each claim and counterclaim is analyzed, viewing the facts in the light most favorable to the Glasses.

### 1. RBC's Breach of Contract Claim

Federal courts deciding state law claims must apply the choice-

of-law rules of the state in which they sit. *Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC,* 307 F. Supp. 2d 1249, 1258-59 (M.D. Ala. 2004). Alabama applies the doctrine of *lex loci contractus* to contract claims. *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.,* 358 F.3d 1306, 1308 (11th Cir. 2004); *Cherry, Bekaert & Holland v. Brown,* 582 So. 2d 502, 506 (Ala. 1991). The Credit Agreement was executed in Alabama, so that Alabama law governs any issues of enforceability and interpretation. RBC is not asking this court to determine the efficacy of the Florida mortgage that purportedly secures this loan. That is the subject of a case pending in Florida. What, if any, effect this decision will have upon the Florida court is for the Florida court.

To establish a breach of contract under Alabama law, a plaintiff must prove: (1) the existence of an agreement; (2) performance by the plaintiff; (3) failure to perform by the defendant; and (4) damages. *E.g. S. Med. Health Sys., Inc. v. Vaughn,* 669 So. 2d 98, 99 (Ala. 1995). The elements necessary for a valid contract under Alabama are: (1) an offer; (2) acceptance thereof; (3) consideration; and (4) mutual assent to essential terms. *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1118 (Ala. 2003). The Glasses and Amsouth Bank both signed the Credit Agreement, pursuant to which AmSouth made available a $152,000 line of credit to the Glasses in exchange for the Glasses' promise to make monthly installments and a balloon payment. The facts,

including the terms of the Credit Agreement, are sufficiently definite so that the court can determine the obligations of the parties as a matter of law.  The Credit Agreement is an agreement between the parties, satisfying the first element. As to the second element, the evidence is clear and undisputed that RBC performed its obligations under the Credit Agreement.  RBC, and/or its predecessors in interest, actually lent money to the Glasses according to the terms of the Credit Agreement.  As to the third element, the evidence is equally clear that the Glasses failed to perform the obligations required of them.  The agreement provided that in the event that the Glasses failed to make a monthly payment, they would be in default, making the outstanding balance due upon demand.  RBC offers proof, uncontroverted, that the Glasses failed to make their monthly payments and a demand was made upon them.  In her responses to RBC's first request for admissions, A. Glass admits that the Glasses failed to make payments when due, and that they were in default under the terms of the Credit Agreement.  A. Glass admits that, despite the Glasses' default, the Glasses, after acceleration and demand, have not paid the outstanding balance of their loan.

   Lastly, it is clear that RBC has suffered damages as a result of the Glasses' breach. RBC provides evidence by sworn affidavit made by a person with knowledge, that, as of July 21, 2010, the amount outstanding on the Glasses' loan was $147,938.98, excluding

11

attorney fees and costs.  Beyond the Glasses' naked assertion that they were inappropriately charged fees by AmSouth Bank, which is not a party, they offer no evidence to dispute RBC's claim of the amount outstanding.

Without a genuine issue of material fact as to any of the elements under Alabama law, RBC's motion for summary judgment will be granted as to the claim of breach of contract, and a money judgment will be entered, except for attorney's fees.

**2. The Glasses' Counterclaims:**

**a. RESPA**

Section 6(e) of RESPA requires a loan servicer to take certain actions with respect to borrower inquiries. *See* 12 U.S.C. § 2605(e). In order to trigger the duty of the loan servicer, the borrower must, via a QWR, alert the loan servicer of the reasons for the borrower's belief that the account is in error. 12 U.S.C. § 2605(e)(1)(B). Within twenty (20) days of receiving the QWR, RESPA requires the servicer to acknowledge receipt of the QWR.  12 U.S.C. § 2505(e)(1)(A); 24 CFR § 3500.21(e)(1).  Next, within sixty (60) days, the servicer must do one of three things: (1) correct the borrower's account and inform the borrower of the corrections in writing; (2) investigate and provide a written explanation to the borrower of the reasons that the servicer believes that the borrower's account is correct; or (3) investigate and provide a written explanation to the borrower of the reasons that the servicer

cannot obtain the information that the borrower is requesting. *See* 12 U.S.C. § 2605(e)(2); *Chipka v. Bank of Am.,* 355 F.App'x. 380, 382 (11th Cir. 2009); 24 CFR § 3500.21(3)(3).

The Glasses allege that RBC committed two categories of RESPA violations: (1) that it refused to provide information on pooling agreements pursuant to account numbers that appear to indicate that the subject Credit Agreement was part of a special investment vehicle or securitized as part of a trust agreement; and (2) that it refused to answer material questions regarding the Glasses' loan and certain questionable charges.

Although there is no binding Eleventh Circuit precedent on point, the court finds that the first category of violations alleged by the Glasses is beyond the purview of RESPA. Under RESPA, a QWR must include a statement of the borrower's reasons for believing that there is an error in **servicing** the account. *See* 12 U.S.C. § 2605(e)(1)(B)(ii).  Servicing is defined as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C.A. § 2605(i)(3).

The Glasses' first category of allegations (that RBC may have securitized their loan) does not relate to **servicing** the loan, as defined by RESPA.  Courts in other circuits agree with this analysis. *See, e.g.*, *Gates v. Wachovia Mortg., FSB,* 2010 WL 2606511

13

at *3 (E.D. Cal. June 28, 2010)(holding that borrower's correspondence questioning **ownership** of loan and alleging **defective loan documentation** did not allege servicing error and thus did not qualify as a QWR); *Arellano v. Am. Home Mortg. Serv., Inc.,* 2010 WL 2300986 at *2 (N.D. Cal. June 4, 2010)(finding that borrower's correspondence, which questioned **predatory lending** schemes in mortgage industry, did not pertain to servicing loan); *Harris v. Am. Gen. Fin. Inc.,* 2005 WL 1593673 at *3-*4 (D.Kan. July 6, 2005)(holding that QWR must raise questions about **servicing** the loan); *MorEquity, Inc. v. Naeem,* 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (finding that borrower's inquiry questioning the **validity** of loan and mortgage documents without inquiring about the account balance did not relate to the **servicing** of the loan, and thus was not a QWR). Accordingly, the Glasses' RESPA counterclaim fails as a matter of law to the extent that it relies on RBC's alleged failure to respond to the first category of broadcast requests. The court realizes that the transfer of bundled mortgages by banks and other financial institutions in recent years has created a nightmare, but this is not the case that calls for solving these problems.

Regarding the Glasses' second category, RBC's responses to the Glasses' QWR met the burden imposed by RESPA, even when viewing the facts in the light most favorable to the Glasses. On December 22, 2008, the Glasses sent an extra-long QWR to RBC. It included at

least 178 separate requests for admission and production of documents. On January 21, 2009, (within 20 business days of receiving the Glasses' QWR) RBC responded and acknowledged the receipt of the QWR. On March 13, 2009, (within 60 business days of receiving the Glasses' QWR) RBC responded to the QWR, not only saying categorically that the Glasses' loan had been serviced properly, but including the Glasses' payment history with RBC, along with other pertinent information. *See* pp. 4-5, *supra.* RBC could hardly have been expected to do more. Its response was comprehensive and reasonable.

Because RBC's two responses to the Glasses' out-sized QWR satisfied the requirements of RESPA (*see Chipka,* 355 F.App'x. at 382, affirming district court's grant of summary judgment of RESPA claims brought against servicer, where the servicer: (1) acknowledged receipt of the QWR within 20 days; (2) provided a written explanation within 60 days as to why the account was correctly serviced; and (3) provided the name and telephone number of an employee who could assist the borrower with further inquiries), RBC's motion for summary judgment will be granted as to the Glasses' RESPA counterclaim.

    **b.  FDCPA**

The purpose of FDCPA is to "eliminate abusive debt collection practices by **debt collectors**," and to protect consumers who have been the victims of such practices. 15 U.S.C. § 1692(e) (emphasis

added); *see also Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F. Supp. 2d 1161, 1165 (N.D. Ala. 1999).  **Debt collectors** are bound by the FDCPA's restrictions, while **creditors**, a distinct breed, are not. *E.g. Pelfrey,* 71 F.Supp. 2d at 1166.  Under the FDCPA:

> The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  This court cannot re-write legislation to suit a debtor.

Although no party addresses this issue in brief, the court will overlook the Glasses' shortcomings in this regard.  Under the FDCPA the term "debt collector":

> includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692(a)(6).  This "false name provision" holds creditors **posing** as third-party debt collectors to the same standards applied to *bona fide* debt collectors under the FDCPA.  *E.g. Catencamp v. Cedant Timeshare Resort Group-Consumer Finance, Inc.,* 471 F.3d 780, 781 (7th Cir. 2006); *Kuria v. Palisades Acquisition XVI, LLC* 2010, WL 4780769 at *6 (N.D.Ga. 2010).

Next, the FDCPA defines a "creditor" as

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term **does not include** any person to the extent that he receives an

16

> **assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.**

15 U.S.C. § 1692a(4)(emphasis added).

In its denial of RBC's earlier motion to dismiss the Glasses' FDCPA counterclaims under Rule 12 (b) analysis, the court noted that more discovery might determine whether RBC was a debt collector or a creditor, "including evidence relating to the assignment of rights from Regions to RBC and evidence relating to the relationship, if any, between RBC and any 'third party' RBC may have hired." (Doc. 30 at 14.) Based on the evidence produced during subsequent discovery, the court is satisfied that, for FDCPA purposes, RBC is a **creditor** and not a **debt collector**. *See* p.3, *supra*. First, RBC's principal business is not the collection of debts owed to another. RBC either lends money directly and collects the money owed it, or purchases and services performing loans from other banks. As the **owner**, RBC is a **creditor**. The Glasses' loan was not in default when it was assigned to RBC in 2007. The Glasses have presented no evidence to refute the contention by RBC that it is a creditor for FDCPA purposes. A. Glass's responses constitute a concession that the telephone harasser was a third party.

Neither do the Glasses' bare allegations subject RBC to the FDCPA's false name provision. Under the false name provision, a creditor attempting to collect its accounts by **posing** as a third-party debt collector is subject to the requirements of the FDCPA.

17

*E.g. Catencamp* 471 F.3d at 781; *Kuria* 2010 WL 4780769 at \*6. However, the Glasses themselves contend that RBC hired a third-party or independent contractor of the entity that allegedly violated the FDCPA. Even with all inferences in favor of the Glasses, who were provided an extension for discovery, the only logical conclusion from the evidence is that the alleged harasser was a third party who could not have created vicarious liability for RBC. The Glasses do not even allege, much less prove, that RBC attempted to collect this debt while posing as a third-party debt collector. Therefore, RBC was not subject to the FDCPA under the false name provision.

RBC's motion for summary judgment will be granted as to all of the Glasses' FDCPA claims, express or implied.

### c. Unjust Enrichment

A claim for unjust enrichment is an implied contract claim. *See, e.g., Architectura, Inc. V. Miller,* 769 So. 2d 330, 335 (Ala. Civ. App. 2000). Under Alabama law, "a party cannot recover on a claim of unjust enrichment where there is an enforceable express contract between the parties concerning the same subject matter on which the unjust enrichment claim rests." *Sullivan v. Mazak Corp.,* 805 So. 2d 674, 674 (Ala. 2000)(Justice See concurring in part and dissenting in part). *See also, e.g., White v. Microsoft Corp.,* 454 F. Supp. 2d 1118, 1133 (S.D. Ala. 2006); *Kennedy v. Polar-BEK & Baker Wildwood P'ship,* 682 So. 2d 443, 447 (Ala. 1996); *Vardaman v. Florence City Bd. of Educ.,* 544 So.2d 962 (Ala. 1989).

As explained *supra*, the Credit Agreement, after its transfer, became an express contract between the Glasses and RBC. Accordingly, there was an express contract covering the subject matter of the Glasses' unjust enrichment claim. By bringing a counterclaim for breach of contract against RBC, the Glasses tacitly acknowledge that the Credit Agreement was an express contract. (Doc. 12, ¶¶ 141-43.) For the foregoing reasons, the Glasses' counterclaim for unjust enrichment fails as a matter of law, and RBC's motion for summary judgment will be granted as to this claim.

### d.  Breach of Contract Counterclaim

As explained, *supra*, even viewing the facts in the light most favorable to the non-movants, the Glasses breached their contract with RBC rather than vice versa. Accordingly, the Glasses' counterclaim for breach of contract must fail, and RBC's motion for summary judgment must be granted as to this counterclaim.

### 3.  Attorney Fees and Costs

The Credit Agreement provides that, should the Glasses default, RBC may recover, not only the unpaid balance, but attorney fees and costs associated with collecting the amount owed. The balance reflected in RBC's affidavit is presumed correct in light of the absence of any counter-affidavit. Under Alabama law, contracts providing for the payment of attorney fees are enforceable. *E.g., Royal Cup, Inc. v. Jenkins Coffee Serv., Inc.,* 898 F.2d 1514, 1523 (11th Cir 1990); *James v. James,* 768 So. 2d 356, 360-61 (Ala. 2000).

19

Accordingly, RBC may file a fee petition with the court to recover its reasonable attorney fees.

## CONCLUSION

For the foregoing reasons, RBC's motion for summary judgment will be granted as to its affirmative claim, as well as to all of the Glasses' unruled on counterclaims. A separate order and final judgment will be entered.

DONE this 14th day of December, 2010.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE