FILED
2011 Feb-11  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RBC BANK (USA), | } | |
| | } | |
| Plaintiff and | } | |
| counter-defendant, | } | CIVIL ACTION NO. |
| | } | 09-AR-0095-S |
| v. | } | |
| | } | |
| WILLIAM P. GLASS, JR., et | } | |
| al., | } | |
| | } | |
| Defendants and | } | |
| counterclaimants. | | |

**<u>MEMORANDUM OPINION</u>**

*Pro se* defendant, William P. Glass, Jr. ("Mr. Glass"), has filed a motion to alter or amend the final summary judgment in excess of $147,000 entered on December 14, 2010, against him and his co-defendant, Anne A. Glass ("Mrs. Glass"), who is also *pro se*. Mr. Glass is a lawyer, but does not represent Mrs. Glass. Mrs. Glass has adopted all of Mr. Glass's post-judgment positions, although she proceeds without counsel. The Glasses' current motion is based entirely on the allegation, not successfully argued during Rule 56 consideration, that plaintiff, RBC Bank ("RBC"), did not mitigate its damages, failing to pursue open avenues of recovery from its insurer.

Although the Glasses do not invoke Rule 59(e), the court will assume that Rule 59(e) is the rule they depend upon. Failure to mitigate is a cognizable defense, but the defense comes too late. It cannot be presented under Rule 59(e). The Glasses offer no

evidence that was not available to them before RBC's motion for summary judgment was taken under submission and decided.  Any other arguments on the subject of mitigation were presented during Rule 56 consideration and were either expressly or impliedly addressed by the court and will not be revisited.

During oral argument on the Glasses' post-judgment motion, the court said that RBC and its predecessor owners of the Glasses' debt were less than perfect in the way they handled this matter.  Any imperfections in RBC's procedures during a complex and volatile mortgage lending climate did not constitute a fatal failure to mitigate.  Further, the court assumes that if an insurer had paid RBC the debt owed by the Glasses, the insurer would have automatically become subrogated to the Glasses' debt and, instead of RBC, the insurer would have been the plaintiff in this case. All possible claims RBC may have had against an insurer were fully explored by RBC before it pursued the Glasses.  "Mitigation" does not require an exercise in futility.

A more troubling issue is raised in RBC's post-judgment motion for attorney's fees and expenses under Rule 54(d)(2)(A), a rule which provides as follows:

> (2)(A) *Claim to be by Motion*.  A claim for attorney's fees and related nontaxable expenses must be made by motion **unless the substantive law requires those fees to be proved at trial as an element of damages.**

(emphasis added).  RBC wants to recover fees and expenses of approximately $93,000, for having successfully obtained a judgment

of $147,000.  Whether the judgment will ever be collected is, of course, a matter of speculation.  The court has never seen the contract between RBC and its lawyers.

RBC's suit was for breach of a contract that, by its express terms, provided for RBC's attorney's fees to be paid by the Glasses in the event of default and the employment of attorneys.  The very words of 54(d)(2)(A) prove that a trial court must distinguish between post-judgment prevailing party fees, and fees owed as an integral part of a contractual obligation.  It is unusual, but possible, for a written contract to provide for the recovery of attorney's fees only in the event the party claiming a breach prevails.  This was the situation the court will address in a later portion of this opinion discussing the *Kershaw* litigation.  Under such a contract, logic dictates a separation of the attorney's fee question until a decision is reached that the non-breaching party wins.  If the decision on a claim for breach of contract is made by a jury, the Seventh Amendment requires that the same jury determine any contractually provided attorney's fee as part of the prevailing party's damages, that is, unless the parties mutually agree otherwise.  If, in the instant case, the court had denied RBC's motion for summary judgment, and the case had been tried to the jury demanded by the Glasses, and if the Glasses had not agreed to bifurcate or postpone the attorney's fee question for adjudication by the court, RBC would have been required to prove its attorney's

3

fees as part of its case-in-chief.  Damages in the form of attorney's fees were an integral part of RBC's claim for breach of contract.

During oral argument, RBC presented an authority not cited by it in earlier briefs.  To justify its post-judgment application for attorney's fees, RBC relies upon *Knox Kershaw, Inc. v. Kershaw*, 552 So.2d 126 (Ala. 1989), which was snuggled among five intermittent visits by the Kershaw family to the Alabama Supreme Court.  *See Kershaw v. Knox Kershaw, Inc.*, 523 So.2d 351 (Ala. 1988); *Ex parte Knox Kershaw, Inc.*, 562 So.2d 250 (Ala. 1990)*; Knox Kershaw, Inc. v. Kershaw* 598 So.2d 1372 (Ala. 1992); and *Kershaw v. Kershaw*, 848 So.2d 942 (Ala. 2002).  Although a federal court in a diversity case is acting as a state court, and is bound by the substantive law of the forum state, nothing in any of the *Kershaw* cases contradicts nor ameliorates the well understood substantive law of Alabama on the subject now before the court.  *Kershaw* is not a case that approves, much less requires, the bifurcation between the decision-making on breach and on out-of-pocket losses and on prevailing party attorney's fees.  *Kershaw* is strange to the point of being *sui generis* because of its peculiar procedural facts.  The Supreme Court agreed with the lower court's first finding that a non-competition agreement was valid, had been breached, and that an injunction against competition was appropriate, but reversed and remanded because the lower court had failed to award monetary

4

damages, including the attorney's fees called for by the contract
if plaintiff prevailed.  The lower court had anomalously "reserved"
any questions of damages or attorney's fees.   The original
complaint in *Kershaw* was brought in equity and was tried *ore tenus*.
The Supreme Court acknowledged that the lower court had **"reserved"**
the matter of damages, including the attorney's fees called for if
the plaintiff prevailed.  On remand, the lower court, after another
*ore tenus* hearing, awarded nominal actual damages, but denied
attorney's fees.   In doing so, it violated the mandate of the
appellate court, which required him to award **monetary damages**,
**including attorney's fees**.   In the *Kershaw* appeal that followed,
the lower court was again reversed, this time for having violated
the mandate.   The lower court's award of only nominal actual
damages was affirmed, but the case was remanded because no
attorney's fees had been awarded.  The lower court thereupon fixed
a fee, but in a much lesser amount than the plaintiff had asked
for.   On the next appeal, the Supreme Court finally gave up,
holding:

> [T]he trial court was not provided with any breakdown of
> the attorneys' time or fees that were allocated to the
> unsuccessful damages claim and that, therefore, the trial
> court, in its proper exercise of discretion, reduced the
> attorneys' hourly rate to offset the full rate charged by
> the attorneys, which included their time spent in the
> preparation and prosecution of KK's unsuccessful claim
> for damages.

* * *

We recognize that the reasonableness of an award of attorney's fees is within the discretion of the trial court.

598 So.2d at 1374-75.   Like the intransigent lower court in *Kershaw*, this court would balk at awarding $93,000 for a $147,000 collection.   This court is not bound by the Eleventh Circuit decisions instructing its courts in how to fix fees in federal **statutory prevailing party** cases.   If RBC's Rule 56 motion had been supported both by an affidavit by a person with personal knowledge, calculating the amount of the principal and interest owed by the Glasses, **and** by a separate affidavit or affidavits supported an attorney's fee claim, the Glasses would have been availed of the opportunity to prove that the standard fee for a collection in Alabama is one-third of the amount collected.   They were not given that opportunity.

A crucial distinction between *Kershaw*, in its different manifestations, and the instant case is that the contract in *Kershaw* **expressly provided for attorney's fees in the event the non-breaching party prevailed.**   The pertinent language, quoted by the Supreme Court was: "'Royce Kershaw will **reimburse** [KK, Inc.] for such expense **if [KK, Inc.] is successful** in enforcing the provisions of this [agreement]'".   552 So.2d at 129.   (emphasis added; brackets in original).   "**Such expense**" was, of course, to include attorney's fees, but only if the non-breaching party "**is successful**", and only in order to "**reimburse**" the prevailing party

6

for his expenses.  The word "**reimburse**" implies a previous actual payment by the prevailing party to his lawyers.  There was no proof in *Kershaw*, and there is no proof in the instant case, that the prevailing party actually paid the attorneys for the prevailing party anything to set up a right to be **reimbursed**.  In the *Kershaw* cases, neither the litigants nor the Supreme Court made anything out of the word "reimburse".

In the first *Kershaw* appeal, there was no discussion by the Supreme Court about its jurisdiction.  The lower court had not decided all of the issues.  Under federal procedural law, this was not a final judgment, and the appellate court would decline to hear an appeal on less than all issues decided without the grant of a 28 U.S.C. § 1292(b) certification, an exercise by the appellate court of its discretion.  In *Kershaw*, there apparently was no challenge to the jurisdiction of the appellate court and no *sua sponte* consideration of jurisdiction.  The Supreme Court was, of course, correct in holding that an award of attorney's fees would be premature until the non-breaching party is determined to have prevailed.  The lower court had consciously failed to consider damages, apparently wanting to find out before he did whether he was correct to find breach and to grant injunctive relief.  For the lower court to have gone beyond injunctive relief would, in a certain sense, have been "premature".  552 So.2d at 129.

If this court harbored any serious doubt about the applicable

7

Alabama law, this court would certify the question to the Supreme Court of Alabama.

If this court misled RBC by erroneously mentioning Rule 54(d), the court apologizes.  There was never any agreement between these parties respecting a bifurcation or postponement of the attorney's fees question.  The submission of RBC's motion for summary judgment and this court's subsequent entry of final money judgment forecloses RBC's Rule 54(d) motion.

It is understandable that RBC does not seek attorney's fees under the fee shifting provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"); and/or the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA").  A marked difference between these two statutes is that FDCPA requires a showing that the non-prevailing party asserted his claim in bad faith, whereas under RESPA attorney's fees to the prevailing party are a matter of discretion for the court.  In their counterclaim, the Glasses claimed violations of RESPA and of FDCPA.  When this court dismissed the counterclaim, RBC became the "prevailing party" with respect to the counterclaim.  Not only were fee shifting statutes not invoked by RBC, but RBC has made no effort to prove that the Glasses were guilty of bad faith and no effort to differentiate between the lawyer-hours spent in prosecuting the collection suit, and the lawyer-hours spent in defending the Glasses' counterclaim.  The court assumes the truth of the total

lawyer-hours spent by RBC's lawyers, as well as the reasonability of their claimed hourly rates.  If the attorney's fee question had been submitted as part of the original claim, as is mandated by Alabama law, this court, despite RBC's hopeful interpretation of *Kershaw*, would have found it impossible to distinguish RBC's lawyer—hours spent on the separate aspects of the case and could not have awarded any fee.

### Conclusion

Based on the foregoing, the Glasses' motion to alter or amend will be denied, and RBC's motion for a grant of reasonable attorney's fees against the Glasses will also be denied.  A separate appropriate order will be entered.

DONE this 11th day of February, 2011.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE